IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MISSOURI

| | |
|---|---|
| BETH PEACOCK MULLER, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>BLUE DIAMOND GROWERS, DOES 1 through 10,<br><br>Defendants. | Civ. No. _____<br><br>**NOTICE OF REMOVAL**<br><br>[Removed from the Circuit Court for St. Louis County, State of Missouri (Index No. 22SL-CC02735)] |

## **BLUE DIAMOND GROWERS' NOTICE OF REMOVAL**

Defendant Blue Diamond Growers ("Blue Diamond") hereby removes this action, Civil Action No. 22SL-CC02735 ("Action") from the Circuit Court for St. Louis County, State of Missouri to this Court pursuant to 28 U.S.C. § 1441(a). Removal is proper under 28 U.S.C. § 1453 based on the original subject matter jurisdiction of this Court due to the Class Action Fairness Act of 2005 ("CAFA") under 28 U.S.C. §§ 1332(d)(2), (d)(5). Venue is proper under 28 U.S.C. §§ 105 and 1441(a) because the Circuit Court for St. Louis County, where the case was filed, is coextensive with this District. This Notice of Removal complies with 28 U.S.C. § 1446.

### **NATURE OF THE ACTION**

1. On May 24, 2022, plaintiff Beth Peacock Muller filed a Summons with Complaint, captioned *Beth Peacock Muller, individually and on behalf of all others similarly situated v. Blue Diamond Growers and Does 1 through 10* for the Action. A true and correct copy of the Complaint is attached hereto as **Exhibit 1**.

2. The plaintiff is a Missouri resident (Ex. 1, Compl., ¶ 6) who allegedly purchased BDG's Smokehouse flavor almonds (the "Smokehouse Almonds" or the "Almonds"). (*Id.* ¶ 73).

She contends that the "Smokehouse" labeling is "misleading" because the Almonds are flavored with "liquid smoke" rather than prepared in a literal smokehouse. (*Id.*) The plaintiff alleges four causes of action: (1) breach of warranty (*id.* ¶¶ 85-100); (2) breach of implied contract (*id.* ¶¶ 101-05); (3) unjust enrichment (*id.* ¶¶ 106-12); and (4) violation of the Missouri Merchandising Practices Act ("MMPA"), Mo. Rev. Stat. chap. 407 (*id.* ¶¶ 113-20).

## THIS COURT HAS ORIGINAL JURISDICTION UNDER CAFA.

3. This Court has original jurisdiction over the Action under CAFA pursuant to 28 U.S.C. §§ 1441(a) and 1453. Under CAFA, a district court shall have original jurisdiction over any class action in which: (1) the number of members of the proposed class is not less than one hundred, in the aggregate; (2) "any member of a class of plaintiffs is a citizen of a State different from any defendant," and (3) "the matter in controversy exceeds the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. §§ 1332(d)(2), (d)(5). CAFA's "provisions should be read broadly, with a *strong preference* that interstate class actions should be heard in a federal court if properly removed by any defendant." *Dart Cherokee Basin Operating Co., LLC v. Owens*, 574 U.S. 81, 89 (2014) (quoting S. Rep. No. 109-14, p. 43 (2005)) (emphasis added).

4. As set forth below, all three CAFA jurisdictional requirements are met here.

**A. The Proposed Class Exceeds 100 Members.**

5. When "[t]he class size is apparent from the face of [the] complaint" it is "sufficient to meet the CAFA jurisdictional requirement for numerosity." *Davis v. Citibank, N.A*, No. 4:14-cv-1129, 2014 WL 6673520, at *1-2 (E.D. Mo. Nov. 24, 2014) (numerosity requirement satisfied where the complaint included allegations "estimat[ing] that [the putative class included] hundreds of members") (internal quotations omitted).

6. Here, the plaintiff asserts her claims on behalf of a putative class of "[a]ll Missouri citizens who purchased the [Smokehouse almonds] during the Class Period in

2

Missouri" (Ex. 1, Compl., ¶ 13).  The putative Class Period "begins five years prior to [May 24, 2022], and ceases upon [that same date]." (*Id.*)[1]  As such, she alleges upon information and belief that "the Class and Subclass includes thousands of individuals" across Missouri (*id.* ¶ 14).  This is sufficient to satisfy the numerosity requirement.  *See Davis*, 2014 WL 6673520, at *1-2.

   **B.   Minimal Diversity of Citizenship Exists.**

7.  CAFA requires only "minimal diversity" of the parties – "that is, where at least one plaintiff and one defendant are citizens of different states."  *Downing v. Riceland Foods, Inc.*, 298 F.R.D. 587, 590 (E.D. Mo. 2014) (quoting 28 U.S.C. § 1332(d)(2), (6)).

8.  Here, Blue Diamond is a California "agricultural cooperative" with its principal place of business in California.  (*See* Ex. 1, Compl., ¶ 8).  The Complaint alleges that plaintiff is "a citizen of St. Louis County, Missouri."  (*Id.* ¶ 6).  Thus, minimal diversity exists.

9.  The plaintiff, moreover, brings claims "on behalf of a putative class of Missouri citizens, and *only* Missouri citizens."  (*Id.* ¶ 7) (emphasis added).  Thus, there also exists diversity between BDG and each member of the proposed putative class.

   **C.   The Alleged Amount in Controversy Exceeds $5 Million.**

10. While Blue Diamond denies that it is liable to the putative class members for any amount, the total amount in controversy here easily exceeds the $5 million threshold because: (1) the total sales of Smokehouse Almonds in Missouri during the putative class period was approximately $11 million; (2) the plaintiff seeks attorneys' fees, which are properly included in calculating the amount in controversy; (3) the plaintiff seeks injunctive relief, the value of which is also properly included in calculating the amount in controversy; and (4) the plaintiff's and her

---

[1]   Blue Diamond relies upon the plaintiff's allegations solely for purposes of assessing eligibility for removal based on CAFA, 28 U.S.C. § 1332(d), jurisdiction.  Blue Diamond reserves all rights to challenge these allegations for all other purposes, including, but not limited to, denying that the putative classes are properly defined, that the plaintiff has standing to assert claims on behalf of the alleged putative classes, and that the claims in this case are proper for class treatment.

counsel's attempts to avoid federal jurisdiction by seeking to limit the putative class's recovery is improper and ineffective.

      i.    <u>Compensatory Damages</u>

11.    The plaintiff here seeks compensatory damages "in the amount of the difference between the cost paid for the [Smokehouse almonds] as represented . . . and the actual value of the products." (Ex. 1, Compl., ¶ 83.) She further alleges that there are "thousands of individuals on a statewide basis." (*Id.* ¶ 14.)

12.    Yet, she asserts, without support, that the "aggregate damages . . . will not exceed five million dollars . . ." (*Id.* at Prayer for Relief). Not so.

13.    Even if a "class action complaint does not allege that more than $5 million is in controversy, 'a defendant's notice of removal need include only a plausible allegation that the amount in controversy exceeds the jurisdictional threshold.'" *Pirozzi v. Massage Envy Franchising, LLC*, 938 F.3d 981, 983 (8th Cir. 2019) (quoting *Dart Cherokee Basin Operating Co. v. Owens*, 574 U.S. 81, 88 (2014)).

14.    When analyzing the amount in controversy in cases alleging similar consumer fraud claims relating to the sale of a product, the Eighth Circuit has held that it is appropriate to consider the total amount generated by sales of the product at issue within the particular location identified in the putative class definition during the putative class period. *See Raskas v. Johnson & Johnson*, 719 F.3d 884, 887-88 (8th Cir. 2013). In *Raskas*, defendant medication manufacturers "relie[d] on . . . sales figures in Missouri during the relevant statutory time period" to establish the amount in controversy, and the plaintiffs argued that the "figures [could] not establish the amount in controversy because they are overinclusive, as Plaintiffs are only attempting to recover damages for medications wrongfully discarded and replaced due to Defendants' practices." *Id.* 887. The Eighth Circuit rejected that argument, finding that "each

4

defendant's affidavit detailing the total sales of their respective medications in Missouri meets the amount in controversy requirement." *Id.* (quotation omitted). The Court further noted that "Defendants are not required to provide a formula or methodology for calculating the potential damages more accurately . . . as it would require a defendant to confess liability for the entire jurisdictional amount." *Id.* at 888; *see also Dammann v. Progressive Ins. Co.*, 856 F.3d 580, 583-84 (8th Cir. 2017) (affirming denial of motion to remand and rejecting argument by plaintiffs that "the evidence provided by [the defendant] to satisfy CAFA's amount in controversy requirement is overinclusive because it includes all premiums collected on policies with the challenged deductibles, not just the premiums collected from members of the narrowly defined class").

15. In *Fischer v. Vital Pharmaceuticals, Inc.*, the putative class consisted of "purchasers of [the product at issue] over a five year period in Missouri" and, as here, the "damages alleged are the difference between the cost paid for the Product as represented . . . and the actual value of the product," which would be a "percentage of the price paid for the Product." No. 4:22-cv-136, 2022 WL 1185153, at *2-3, n. 1 (E.D. Mo. Apr. 21, 2022). The Court found that the defendants demonstrated the minimum amount in controversy because "the retail sales of [the product at issue] in Missouri were over $35 million" during the putative class period. *Id.* at *2; *see also Embry v. T. Marzetti Co.*, 2020 WL 5291933, at *2 (E.D. Mo. Sept. 4, 2020) (CAFA amount in controversy requirement satisfied where the defendant "sold over $5 million worth of salad dressing to Missouri retailers during the [] four years" prior and the plaintiff "produced no evidence to refute those figures[.]").

16. Here, the putative class consists of all Missouri residents who purchased the Smokehouse Almonds during the five-year period from May 24, 2017, to May 24, 2022. (*Id.* ¶ 13). During that time, the amount generated by sales of the Smokehouse Almonds within the

5

state of Missouri totaled approximately $11 million. Thus, the minimum amount in controversy is easily met through the potential compensatory damages alone.

    ii.    Attorneys' Fees

17. The plaintiff also seeks attorneys' fees (Compl. at 19), which are also properly considered when calculating the amount in controversy. *See Embry*, 2020 WL 5291933, at *2 (including attorneys' fees in calculating amount in controversy). Even in cases where, unlike here, the total sales figures are less than the $5 million requirement, courts in this district have nonetheless found the amount in controversy requirement satisfied where the plaintiffs also sought attorneys' fees. *See*, *e.g.*, *Embry v. T. Marzetti* ("compensatory damages need only exceed $3,571,428.57 to satisfy the $5 million [] minimum" because the rest could be met through attorneys' fees); *Embry s*, 2020 WL 3077058, at *2 (amount in controversy met where total sales amounted to $830,183.04 but plaintiffs could also be awarded punitive damages and attorneys' fees). Thus, taking into consideration the plaintiff's request for attorneys' fees in additional to compensatory damages further supports a finding that the amount in controversy is plainly met here.

    iii.    Cost of Injunctive Relief

18. In addition to the total sales figures and attorneys' fees, the Court may also properly consider the value of the plaintiff's request for injunctive relief. *See*, *e.g.*, *Fischer*, 2022 WL 1185153, at *2. In *Fischer*, for instance, the Court was "even more convinced that [d]efendants have carried their burden" of establishing the amount in controversy "when considering the total sales in conjunction with [attorneys' fees], and injunctive relief." *Id.* at *1-2.

19. Here too, the cost of injunctive relief, combined with the total sales and attorneys' fees, cements the fact that the amount in controversy is met. While the Complaint does not

specify precisely what injunctive relief the plaintiff requests (*see* Ex. 1, Compl., at Prayer for Relief), it appears that she is seeking to have BDG change the labeling of the Smokehouse Almonds in Missouri.  In order to do so, BDG would need to, among other things, destroy all existing packaging for the Smokehouse Almonds, including units already in or headed to stores, design and generate a new label, and engage counsel to review the redesigned label for compliance with all applicable regulations.  To do so could cost BDG hundreds of thousands of dollars, at a minimum.

      iv.    The Plaintiff's and Counsel's Attempt to Avoid Federal Jurisdiction By Stipulation Fails.

20. Included with the Complaint is "Plaintiff and Counsel's Stipulation Regarding Recoverable Damages" (the "Stipulation"), whereby the plaintiff and her counsel purport to affirm, on behalf of themselves and the absent putative class members, that they will "not recover, and completely disclaim recovery of, any combination of damages and/or attorneys' fees" meeting or exceeding $5 million. (Compl. at Ex. A.)  The Stipulation also states that if the plaintiff "is replaced as named representative in this Action, Plaintiffs' counsel stipulates and affirms and covenants that any and all potential class representatives for this Action must similarly stipulate and affirm the above limitation of recovery" and that the plaintiff and her counsel further intend to bind to the Stipulation "any other class members bringing any claim in this specific Action." (*Id.*)

21. The plaintiff and her counsel's attempt to avoid federal jurisdiction is improper. Both the Eighth Circuit and the Supreme Court have held that stipulations by named plaintiffs attempting to limit the recovery of a putative class to frustrate CAFA jurisdiction are ineffective. *Standard Fire Ins. Co. v. Knowles*, 568 U.S. 588, 593 (2013); *Faltermeier v. FCA US LLC*, 899 F.3d 617, 621 (8th Cir. 2018) (affirming denial of motion to remand).  In *Standard Fire*, the Supreme Court held that a similar stipulation signed by a named plaintiff in a putative class

action which sought to limit the damages of the putative class to beneath the $5 million threshold did not prevent CAFA jurisdiction because "a plaintiff who files a proposed class action cannot legally bind members of the proposed class before the class is certified." *Id.* at 592-93; *see also Fischer*, 2022 WL 1185153, at *2.

22. The Eighth Circuit has likewise held that an attorney representing a putative class may not limit his own recovery of attorneys' fees in order to avoid CAFA jurisdiction. *See Faltermeier*, 899 F.3d at 621.

23. The Stipulation here is plainly improper under these longstanding precedents. It states that "Plaintiffs will not recover, and completely disclaim recovery of, any combination of damages and/or attorneys' fees related to this action meeting or exceeding [$5 million]" (Ex. 1, Ex. A), and purports to bind any named representative that might replace the plaintiff and "any other class members bringing any clam in this specific action" to the same limitation. *Id.* This is a clear attempt to "'legally bind members of the proposed class before the class is certified,'" which has been rejected by the Supreme Court and the Eighth Circuit. *Fischer*, 2022 WL 1185153, at *2 (quoting *Standard Fire*, 568 U.S. at 593).

24. The Stipulation is therefore ineffective and does not impact the amount in controversy here.

## ALL PROCEDURAL REQUIREMENTS FOR REMOVAL HAVE BEEN SATISFIED.

25. All process, pleadings, and orders received by Blue Diamond in the Action, consisting of the Summons and Complaint and Affidavit of Service, are included with **Exhibit 1**.

26. This notice is properly filed in the United States District Court for the Eastern District of Missouri. The Circuit Court for St. Louis County, State of Missouri, is located within the Eastern District of Missouri. Venue for removal is therefore proper because this is the

"district and division embracing the place where such action is pending." 28 U.S.C. § 1441(a); *see also* 28 U.S.C. § 112(b).

27. This notice is timely because it is being filed "within 30 days after the receipt by the defendant, through service or otherwise, of a copy of the initial pleading setting forth the claim for relief upon which such action or proceeding is based." 28 U.S.C. § 1446(b)(1).

28. Blue Diamond was served on June 2, 2022, and because this notice is being filed within 30 days of June 2, 2022, it is timely under 28 U.S.C. § 1446(b)(1).

29. Because Blue Diamond is the sole defendant in this action, no other defendant is required to consent to this removal.

30. In accordance with 28 U.S.C. § 1446(d), a copy of this Notice of Removal is being served upon counsel for the plaintiff and a copy, along with a Notice to Clerk of Removal, is being filed with the Clerk of the Circuit Court for St. Louis County, State of Missouri.

## **RESERVATION OF RIGHTS**

31. This Notice of Removal is filed subject to and with full reservation of all rights and defenses under federal or state law, including but not limited to defenses and objections to forum, venue, improper service, and personal jurisdiction. No admissions are intended hereby as to the propriety of liability or damages with respect to any aspect of this case. Nothing in this Notice of Removal should be taken as an admission that the plaintiffs' allegations are sufficient to state a claim for relief or have any merit, or that the plaintiffs or putative class members are entitled to or otherwise may recover any of the amounts described above.

Dated: July 1, 2022
     Dallas, Texas

Respectfully submitted,

**DLA Piper LLP (US)**

  */s/ Matthew Nickel*
Matthew Nickel, State Bar No. 24056042
1900 N. Pearl St.
Suite 2200
Dallas, Texas 75201
214-743-4500
matt.nickel@us.dlapiper.com

Colleen Carey Gulliver*
Rachael C. Kessler*
1251 Avenue of the Americas
New York, New York 10020
212-335-4500
colleen.gulliver@us.dlapiper.com
rachael.kessler@us.dlapiper.com

Elizabeth J. Jonas*
51 John F. Kennedy Pkwy.
Suite 120
Short Hills, New Jersey 07078
973-520-2550
elizabeth.jonas@us.dlapiper.com

*application for admission *pro hac vice* to be submitted

*Counsel for Defendant Blue Diamond Growers*

## **CERTIFICATE OF SERVICE**

      I hereby certify that on this 1st day of July, 2022, a true and correct copy of the foregoing document was served upon the following via the Court's electronic notification system:

**Harvath Law Group, LLC**
Daniel F. Harvath
75 W. Lockwood, Suite #1
Webster Groves, MO 63119
(314) 550-3717
dharvath@harvathlawgroup.com