UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

BETH PEACOCK MULLER,                )
et al., *individually and on behalf of*   )
*all others similarly situated*,         )
                                    )
            Plaintiffs,             )
                                    )
      v.                            )          No. 4:22 CV 707 RWS
                                    )
BLUE DIAMOND GROWERS,               )
et al.,                             )
                                    )
            Defendants.             )

## MEMORANDUM AND ORDER

Plaintiffs Beth Peacock Muller, Thomas Fellin, and Michael Floyed bring this

putative class action against Defendants Blue Diamond Growers and Does 1 through

10 on behalf of themselves and all others similarly situated, alleging that Defendants

have engaged in deceptive marketing of Blue Diamond's Smokehouse® almonds.

Blue Diamond moves to dismiss Plaintiffs' amended complaint pursuant to Rule

12(b)(6) of the Federal Rules of Civil Procedure.  For the reasons discussed below,

Blue Diamond's motion will be granted.

## BACKGROUND

Blue Diamond markets and sells a line of almonds that are sold in packages

that have "Smokehouse®" prominently displayed on the front.  Plaintiffs claim that

Blue Diamond's Smokehouse® almonds are deceptively marketed to consumers

because they are not smoked in a smokehouse—they are flavored with artificial liquid smoke.  Plaintiffs claim that this is problematic because smoked almonds are commonly sold and preferred by consumers.  Plaintiffs claim that Blue Diamond is taking advantage of the consumer preference for smoked almonds by falsely portraying its Smokehouse® almonds as smoked in a smokehouse.

Blue Diamond's Smokehouse® almonds are sold in plastic bags and metal canisters of varying shapes and sizes.  Regardless of the manner of packaging, the packages uniformly state "Smokehouse®" on the front.  The packages also provide a list of ingredients on the back.  The list of ingredients includes, among other things, "natural hickory smoke flavor" and "natural flavors."  According to Plaintiffs, the packages do not clarify that Blue Diamond's Smokehouse® almonds are not smoked in a smokehouse.  Plaintiffs claim that even the inclusion of "natural hickory smoke flavor" in the list of ingredients could be misinterpreted as referring to a smoke flavor produced through a natural smoking process.

Plaintiffs are citizens and residents of Missouri, and they allege that they purchased Blue Diamond's Smokehouse® almonds in Missouri primarily for personal, family, and household purposes.  Plaintiffs claim that they believed that they were purchasing almonds that were smoked in a smokehouse due to the packaging of Blue Diamond's Smokehouse® almonds.  Plaintiffs also claim that they would not have purchased Blue Diamond's Smokehouse® almonds, or would

not have paid as much for them, if they had known that the almonds were not smoked in a smokehouse. Plaintiffs bring this putative class action against Blue Diamond and Does 1 through 10,[1] alleging that Defendants have engaged in deceptive marketing. Plaintiffs claim that they were damaged as a result of Defendants' deceptive marketing in the amount of the difference between the cost that they paid for Blue Diamond's Smokehouse® almonds as represented—that is, almonds that were smoked in a smokehouse—and the actual value of the almonds.

In their amended complaint, Plaintiffs bring four claims: (Count I) breach of warranty under Missouri law; (Count II) breach of implied contract under Missouri law; (Count III) unjust enrichment under Missouri law; and (Count IV) violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010 et seq., (MMPA) and other consumer-protection statutes. Plaintiffs seek "[an] award of compensatory damages, restitution, punitive damages, and attorneys' fees, and such further relief as the Court deems just, including injunctive relief." Blue Diamond moves to dismiss Plaintiffs' amended complaint pursuant to Rule 12(b)(6).

## LEGAL STANDARD

The purpose of a motion to dismiss under Rule 12(b)(6) is to test the legal sufficiency of the complaint. In ruling on such a motion, I must accept all factual

---

[1] Plaintiffs allege that the true names and capacities of Does 1 through 10 are not currently known but that each of them is legally responsible for the alleged acts in this case.

allegations in the complaint as true and view them in the light most favorable to the plaintiff.  Hager v. Arkansas Dep't. of Health, 735 F.3d 1009, 1013 (8th Cir. 2013).  I may not, however, "presume the truth of legal conclusions couched as factual allegations."  Id. (citing Papasan v. Allain, 478 U.S. 265, 286 (1986)).

To survive a motion to dismiss under Rule 12(b)(6), a plaintiff need not provide "detailed factual allegations" but must provide "sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009).  A claim is plausible on its face when the plaintiff pleads sufficient facts to allow me to draw "the reasonable inference that the defendant is liable for the misconduct alleged."  Id.  This requires a complaint to contain enough factual allegations "to raise a right to relief above the speculative level."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007).

## DISCUSSION

Blue Diamond moves to dismiss Plaintiffs' amended complaint in its entirety.  Blue Diamond makes several arguments in support of its motion.  I will address Blue Diamond's arguments as they apply to Plaintiffs' claims.

### A.     Breach of Warranty Under Missouri Law (Count I)

In Count I, Plaintiffs allege that Blue Diamond sold its Smokehouse® almonds in the regular course of its business; that Blue Diamond "made promises and representations in an express warranty," namely, that its Smokehouse® almonds

4

were smoked in a smokehouse; that Blue Diamond's express warranty became the basis of the bargain between it and Plaintiffs; that Blue Diamond breached its express warranty because its Smokehouse® almonds are not smoked in a smokehouse; and that they mailed Blue Diamond written notices of its breach of warranty. (Doc. 32 at ¶¶ 60, 91–94, 96, 100). Plaintiffs also allege that Blue Diamond "impliedly" warranted to them that its Smokehouse® almonds were "accurately labeled in conformance with the law." (Id. at ¶ 103).

## 1. *Express Warranty*

Blue Diamond argues that Plaintiffs' breach-of-express-warranty claim should be dismissed because Plaintiffs have not plausibly alleged a misstatement. Blue Diamond makes largely the same argument with respect to Plaintiffs' MMPA claim. I will address the majority of the points raised by Blue Diamond when discussing Plaintiffs' MMPA claim. For purposes of Plaintiffs' breach-of-express-warranty claim, I will address only two points. The first point is Blue Diamond's contention that Plaintiffs cannot rely on a trade name to show an express warranty. Plaintiffs do not respond this argument in their memorandum in opposition; in fact, they do not specifically discuss their breach-of-express-warranty claim at all. The second point is Blue Diamond's contention that Plaintiffs abandoned their breach-of-express-warranty claim by failing to respond to its argument regarding their reliance on its trade name to show an express warranty.

"Courts in the Eighth Circuit have consistently acknowledged that failure to respond to arguments raised in a motion to dismiss constitutes an abandonment of that claim or concession to the opposing arguments." Little v. United States Dep't of Def., No. 4:21-CV-1309-JAR, 2022 WL 1302759, at *3 (E.D. Mo. May 2, 2022); see also Ursery v. Federal Drug Enforcement Admin., No. 4:12CV1911 HEA, 2014 WL 117627, at *2 (E.D. Mo. Jan. 13, 2014) (collecting cases). Here, Plaintiffs have not responded to Blue Diamond's argument regarding their reliance on its trade name. Nor have Plaintiffs even specifically discussed their breach-of-express-warranty claim. Plaintiffs have therefore at least arguably abandoned their breach-of-express-warranty claim.[2] However, even if Plaintiffs did not abandon their breach-of-express-warranty claim, the claim will still be dismissed.

Under Missouri law, express warranties by a seller are created by "[a]ny affirmation of fact or promise made by the seller to the buyer which relates to the goods and becomes a part of the basis of the bargain" and "[a]ny description of the goods which is made part of the basis of the bargain." Mo. Rev. Stat. § 400.2-313(1)(a) & (b). To state a claim for breach of express warranty, a plaintiff must plausibly allege that: (1) the defendant sold her goods; (2) the defendant made a statement of fact about the kind or quality of those goods; (3) the statement of fact

---

[2] Although Plaintiffs did not specifically discuss their breach-of-express-warranty claim, they did respond to the majority of the points raised by Blue Diamond in discussing their MMPA claim.

was a material factor inducing her to purchase the goods; (4) the goods did not conform to the statement of fact; (5) the nonconformity injured her; and (6) she notified the defendant of the nonconformity in a timely manner.  Renaissance Leasing, LLC v. Vermeer Mfg. Co., 322 S.W.3d 112, 122 (Mo. banc 2010).

Although there does not appear to be any binding legal authority on the issue, some courts have held that a registered trade name, without more, does not create an express warranty.  See Lisowski v. Henry Thayer Co., Inc., 501 F.Supp.3d 316, 329 (W.D. Pa. 2020) ("The minimal case law, addressing the issue of whether a trademark can create an express warranty, uniformly holds that a trademark cannot create an express warranty."); Boyd v. TTI Floorcare N. Am., 230 F.Supp.3d 1266, 1279 (N.D. Ala. 2011) ("[T]he court cannot find any law supporting [plaintiffs'] contention that a registered trade name, without more, creates an express warranty as to what the product will do.").  As one court observed, "a product's trademarked name is more akin to sales talk and puffery, which are not actionable bases for an express warranty claim, than to a description of a product, a promise, or an affirmation of fact."  Boyd, 230 F.Supp.3d at 1278.

I find this reasoning persuasive and find that the Smokehouse® trade name, without more, does not create an express warranty under Missouri law.  The Smokehouse® trade name is not a "statement of fact" about the kind or quality of the almonds, and it is not otherwise a "promise" or a "description of" the almonds.

7

Because Plaintiffs' breach-of-express-warranty claim is based on the Smokehouse®
trade name, the claim fails.  Blue Diamond's motion will therefore be granted as to
Plaintiffs' breach-of-express-warranty claim in Count I.

### 2.   *Implied Warranty*

To the extent Plaintiffs bring a breach-of-implied-warranty claim, Blue
Diamond assumes for purposes of its motion that the claim is based on the implied
warranty of merchantability, and it argues that the claim should be dismissed
because Plaintiffs do not allege that its Smokehouse® almonds were unfit for human
consumption.  Blue Diamond also argues that any breach-of-implied-warranty claim
should be dismissed because Plaintiffs have not given fair notice of what their claim
is and the grounds upon which it rests.

Plaintiffs do not directly respond to Blue Diamond's argument regarding their
breach-of-implied-warranty claim.  Instead, Plaintiffs confusingly respond to Blue
Diamond's arguments regarding their unjust-enrichment claim, their breach-of-
implied-contract claim, and their breach-of-implied-warranty claim simultaneously.
Plaintiffs do not identify the implied warranty that Blue Diamond allegedly
breached, and they do not cite any legal authority to show that they have adequately
pleaded a breach of implied warranty.  Plaintiffs simply state: "[T]he implied
warranty/contract claims are based upon the 'implied duty of good faith and fair
dealing,' inherent in any contractual undertaking (the purchase of the [p]roduct),

8

whether or not it is memorialized in writing. … By representing that the almonds were smokehouse almonds when they are in fact flavored with artificial liquid smoke, [Blue Diamond] has – in the alternative to breaching express warranties – also breached that implied duty of good faith and fair dealing."

To the extent Plaintiffs bring a breach-of-implied-warranty claim based on the implied duty of good faith and fair dealing, the claim will be construed as a breach-of-implied-contract claim, and it will be dismissed for the reasons discussed with respect to Count II.  To the extent Plaintiffs bring a breach-of-implied-warranty claim in Count I, such a claim is not adequately pleaded because Plaintiffs have not given Blue Diamond fair notice of what the claim is and the grounds upon which it rests.  See Twombly, 550 U.S. at 555 (internal quotation marks omitted) (stating Rule 8 requires "a short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the claim is and the grounds upon which it rests").  Indeed, it is unclear from Plaintiffs' amended complaint that a breach-of-implied-warranty claim is even being raised, and Plaintiffs have provided very little (if any) explanation in support of such a claim.  See Gregory v. Dillard's, Inc., 565 F.3d 464, 473 (8th Cir. 2009) (internal quotation marks omitted) ("A district court … is not required to divine the litigant's intent and create claims that are not clearly raised.").  As a result, Blue Diamond's motion will also be granted as to Plaintiffs' breach-of-implied-warranty claim in Count I.

**B.**     **Breach of Implied Contract Under Missouri Law (Count II)**

In Count II, Plaintiffs allege that an implied contract for the sale of Blue Diamond's Smokehouse® almonds existed between them and Blue Diamond. (Doc. 32 at ¶ 107). Plaintiffs also allege that an implied duty of good faith and fair dealing existed in each such implied contract. (Id. at ¶ 108). According to Plaintiffs, Blue Diamond violated its implied duty of good faith and fair dealing and, as a result, breached the implied contract between the parties. (Id. at ¶ 109).

Blue Diamond argues that Plaintiffs' breach-of-implied-contract claim should be dismissed because a claim based on the implied duty of good faith and fair dealing requires the existence of a contract, and no contract existed between the parties. Blue Diamond argues that no contract existed because, under Missouri law, an implied contract is not a contract but an obligation to do justice.

Plaintiffs do not provide a substantive response to Blue Diamond's argument regarding their breach-of-implied-contract claim. As noted above, Plaintiffs simply state: "[T]he implied warranty/contract claims are based upon the 'implied duty of good faith and fair dealing,' inherent in any contractual undertaking (the purchase of the [p]roduct), whether or not it is memorialized in writing. … By representing that the almonds were smokehouse almonds when they are in fact flavored with artificial liquid smoke, [Blue Diamond] has – in the alternative to breaching express warranties – also breached that implied duty of good faith and fair dealing."

In its reply memorandum, Blue Diamond argues that Plaintiffs abandoned their breach-of-implied-contract claim by failing to address its argument that a claim based on the implied duty of good faith and fair dealing requires the existence of a contract, and no contract existed between the parties.

Having reviewed Plaintiffs' amended complaint and memorandum in opposition, I agree with Blue Diamond that Plaintiffs have abandoned their breach-of-implied-contract claim.  Plaintiffs have not provided anything beyond a cursory assertion that the sale of Blue Diamond's Smokehouse® almonds created an implied contract, and they have not provided any citations to legal authority to support their assertion.  Moreover, Plaintiffs have not provided any response to Blue Diamond's argument that a claim based on the implied duty of good faith and fair dealing requires the existence of a contract, and no contract existed between the parties. Because Plaintiffs have not offered a substantive response to Blue Diamond's argument, which is well taken, I find that they have abandoned their breach-of-implied-contract claim.  See Huskey v. Colgate-Palmolive Co., 486 F.Supp.3d 1339, 1349–50 (E.D. Mo. 2020) (dismissing breach-of-implied-contract claim because plaintiff failed to respond to the same argument raised in this case).  Blue Diamond's motion will therefore be granted as to Count II.

## C.     Unjust Enrichment Under Missouri Law (Count III)

In Count III, Plaintiffs allege that they conferred substantial benefits on Blue Diamond by purchasing its Smokehouse® almonds and that Blue Diamond accepted and enjoyed those benefits.  (Doc. 32 at ¶¶ 112–13).  Plaintiffs allege that Blue Diamond knew or should have known, however, that their payments were rendered with the expectation that its Smokehouse® almonds would be as represented.  (Id. at ¶ 114).  Plaintiffs allege that Blue Diamond wrongfully received profits from their payments through deliberate misrepresentations or omissions in connection with the advertising, promotion, and sale of its Smokehouse® almonds.  (Id. at ¶ 115). Plaintiffs allege that it would be inequitable under the circumstances to allow Blue Diamond to retain the benefits of their payments.  (Id. at ¶ 114).

Blue Diamond argues that Plaintiffs' unjust-enrichment claim should be dismissed for two reasons.  First, Blue Diamond argues that Plaintiffs' unjust-enrichment claim should be dismissed because it is based on the same alleged misconduct as their MMPA claim and, under Missouri law, an unjust-enrichment claim that is derivative of other claims must be dismissed if the other claims fail. Second, Blue Diamond argues that Plaintiffs' unjust-enrichment claim should be dismissed because Plaintiffs have not adequately alleged that it unjustly retained any benefit from them because its Smokehouse® almonds were fit for human consumption and appear to have been consumed without incident.

12

Plaintiffs argue that they have stated an unjust-enrichment claim because they have stated a viable MMPA claim and have alleged that Blue Diamond unjustly retained the amounts that they paid for its Smokehouse® almonds, "minus what [they] would have paid if they had known the almonds were covered with artificial liquid smoke."  Plaintiffs argue that the fitness or unfitness of Blue Diamond's Smokehouse® almonds for human consumption has little, if anything, to do with their unjust-enrichment claim because the claim is based on the artificiality of the almonds' ingredients and the consequential diminution of the almonds' real value.

Under Missouri law, "[u]njust enrichment occurs when a person retains [a] benefit and enjoys the benefit conferred upon him without paying its reasonable value."  Goldman v. Tapestry, Inc., 501 F.Supp.3d 662, 671 (E.D. Mo. 2020) (internal quotation marks omitted).  To state a claim for unjust enrichment, a plaintiff must plausibly allege that "(1) a benefit was conferred upon the defendant, (2) at the expense of the plaintiff, and (3) it would be unjust to allow the defendant to retain the benefit."  Huskey, 486 F.Supp.3d at 1350.

Plaintiffs' unjust-enrichment claim fails because they have not plausibly alleged that it would be unjust to allow Blue Diamond to retain the benefits of their payments for its Smokehouse® almonds.  Plaintiffs essentially allege that it would be unjust to allow Blue Diamond to retain the benefits of their payments, or at least the full benefits of their payments, because they were misled into believing that its

Smokehouse® almonds were smoked in a smokehouse.  This allegation is based on the same alleged misconduct as Plaintiffs' MMPA claim.  As discussed below, I find that Plaintiffs have not stated a MMPA claim because they have not plausibly alleged a deception.  For the same reasons, Plaintiffs have not plausibly alleged that it would be unjust to allow Blue Diamond to retain the benefits of their payments for its Smokehouse® almonds.  Plaintiffs have therefore failed to state a claim for unjust enrichment, and Blue Diamond's motion will be granted as to Count III.

### D.    Violation of the MMPA (Count IV)

In Count IV, Plaintiffs allege that Blue Diamond's marketing of its Smokehouse® almonds constitutes "deception, false pretense, misrepresentation, unfair practice, or at a minimum, concealment, suppression, or omission of a material fact" in violation of the MMPA and several other consumer-protection statutes.  (Doc. 32 at ¶ 121).  Plaintiffs allege that, as a result of Blue Diamond's deceptive marketing, they were misled or deceived into believing that they were purchasing almonds that used only "natural flavors"—in other words, almonds that were smoked in a smokehouse.  (Id. at ¶ 122).[3]  Plaintiffs allege further that they

---

[3] While Plaintiffs allege in Count IV that they were misled or deceived into believing that they were purchasing almonds that used only "natural flavors," the allegations in their amended complaint make clear that they are claiming that they were misled or deceived into believing that they were purchasing almonds that were smoked in a smokehouse.  This distinction is important because almonds that use only natural flavors are not necessarily smoked in a smokehouse, and almonds that are smoked in a smokehouse do not necessarily use only natural flavors.

suffered an ascertainable loss and that they are entitled to restitution of all funds improperly obtained by Blue Diamond.  (Id. at ¶¶ 123–24).

Blue Diamond argues that Plaintiffs' MMPA claim should be dismissed because (1) Plaintiffs lack statutory standing under the MMPA, and (2) Plaintiffs have not plausibly alleged a deception.

### 1. *Statutory Standing*

Blue Diamond argues that Plaintiffs lack statutory standing under the MMPA because they have not plausibly alleged that they purchased its Smokehouse® almonds for personal, family, or household purposes.  According to Blue Diamond, the timing of Plaintiffs' purchases and their retention of counsel indicate that their purchases were made for litigation.  Plaintiffs respond that the MMPA requires only that the purchases be made "primarily" for personal, family, or household purposes. Plaintiffs also argue that an inquiry into their intentions in purchasing Blue Diamond's Smokehouse® almonds would be inappropriate at this stage because all factual allegations in their amended complaint must be accepted as true and viewed in the light most favorable to them.

The MMPA's private right of action is limited to persons who purchase merchandise "primarily for personal, family or household purposes."  Mo. Rev. Stat. § 407.025.1(1).   Here, Plaintiffs allege that they purchased Blue Diamond's Smokehouse® almonds "primarily for their personal, family and household use."

15

(Doc. 32 at ¶ 80).  Though there may be other allegations in Plaintiffs' amended complaint that raise doubt as to the truth of this factual allegation, at this stage, the allegation must be accepted as true and viewed in the light most favorable to Plaintiffs.  See Hager, 735 F.3d at 1013.  As a result, Plaintiffs' MMPA claim will not be dismissed on the grounds that Plaintiffs lack statutory standing.

### 2.   *Deception*

Blue Diamond argues that Plaintiffs have not plausibly alleged a deception because no reasonable consumer seeing "Smokehouse®" on the front of a package of almonds would believe that the almonds were smoked in "a structure used for curing food," which is the dictionary definition of a "smokehouse."  According to Blue Diamond, a reasonable consumer would simply believe that the package contains almonds with a smoke flavor.  Blue Diamond also argues that the full context of the packaging makes clear that its Smokehouse® almonds' smoke flavor comes from seasoning, not smoking.  In support of this argument, Blue Diamond points to the image on the front of the packaging, which shows that its Smokehouse® almonds are coated in seasoning, and the ingredient list on the back of the packaging, which includes "natural hickory smoke flavor."  Blue Diamond also argues that Plaintiffs cannot rely on a trade name to show a deception.

Plaintiffs argue that the packaging of Blue Diamond's Smokehouse® almonds is deceptive for many reasons.  First, Plaintiffs state that the term "smokehouse"

16

refers only to a structure used for curing food and is never used as an adjective to describe flavor.  Second, Plaintiffs state that the packaging of Blue Diamond's Smokehouse® almonds violates rules of the Food and Drug Administration (FDA) because the use of smoke flavoring is not disclosed on the front of the packaging. Third, Plaintiffs state that smoked almonds are commonly sold and that, in instances where smoke flavoring is used, Blue Diamond's competitors disclose that fact on the front of packaging.  Fourth, Plaintiffs state that there is no way to discern from the packaging of Blue Diamond's Smokehouse® almonds that the almonds are seasoned and that, in any event, the presence of seasoning is not inconsistent with the almonds being smoked.  Fifth, Plaintiffs state that an ingredient list on the back of packaging cannot negate the possibility that a reasonable consumer might be deceived.  And finally, Plaintiffs state that whether a reasonable consumer would be deceived is often a question of fact.

In its reply memorandum, Blue Diamond argues that Plaintiffs abandoned their MMPA claim by failing to respond to its argument regarding their reliance on its trade name to show a deception.  Unlike with their breach-of-implied-contract claim, Plaintiffs provided a substantive response to Blue Diamond's argument regarding their MMPA claim, so I do not find that the claim was abandoned.  I will therefore proceed to the merits of Blue Diamond's argument.

17

The MMPA prohibits the "act, use or employment by any person of any deception, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce." Mo. Rev. Stat. § 407.020.1. To state a claim under the MMPA, a plaintiff must plausibly allege that she: (1) purchased merchandise from the defendant; (2) purchased the merchandise primarily for personal, family, or household purposes; and (3) suffered an ascertainable loss of money or property as a result of the defendant's use or employment of a method, act, or practice declared unlawful under the MMPA. Mo. Rev. Stat. § 407.025.1. The question of "[w]hether a reasonable consumer would be deceived by a product label is generally a question of fact that cannot be resolved on a motion to dismiss." Browning v. Anheuser-Busch, LLC, 539 F.Supp.3d 965, 971 (W.D. Mo. 2021) (internal quotation marks omitted). However, a court may dismiss a MMPA claim if it can "conclude as a matter of law that members of the public are not likely to be deceived by the product packaging." Kelly v. Cape Cod Potato Chip Co., 81 F.Supp.3d 754, 761 (W.D. Mo. 2015) (internal quotation marks omitted); see also Mo. Rev. Stat. § 407.025.1 (stating a court may dismiss a MMPA claim as a matter of law if the claim "fails to show a likelihood that the method, act, or practice alleged to be unlawful would mislead a reasonable consumer"). The

relevant inquiry under the MMPA is whether the product packaging's "overall appearance" is deceiving.  <u>Browning</u>, 539 F.Supp.3d at 972.

Upon review of Plaintiffs' amended complaint, I find that Plaintiffs have not plausibly alleged that a reasonable consumer would likely be deceived into believing that Blue Diamond's Smokehouse® almonds were smoked in a smokehouse.  To start, the packaging of Blue Diamond's Smokehouse® almonds does not state "smoked almonds" or even contain the term "smoked," and the use of the term "Smokehouse" is qualified by a trademark symbol.  (Doc. 32 at ¶¶ 23–25).  The smoked-almond products cited by Plaintiffs, on the other hand, have packaging that states "smoked almonds" and does so without a qualifying trademark symbol.  (<u>Id.</u> at ¶ 45).  This contrast in packaging distinguishes Blue Diamond's Smokehouse® almonds from the smoked-almond products cited by Plaintiffs, and it undermines Plaintiffs' claim that a reasonable consumer would likely be deceived into believing that Blue Diamond's Smokehouse® almonds were smoked in a smokehouse.

Given that the packaging of Blue Diamond's Smokehouse® almonds does not state "smoked almonds" or contain the term "smoked," Plaintiffs' claim depends on a conclusion that a reasonable consumer would likely be deceived by the Smokehouse® trade name.[4]  I find that a reasonable consumer would not likely be

---

[4] There are at least three other cases in which a court considered a motion to dismiss a claim that Blue Diamond's Smokehouse® almonds were deceptively marketed.  The courts in those cases reached different conclusions.  See <u>Colpitts v. Blue Diamond Growers</u>, 527 F.Supp.3d 562

deceived by the Smokehouse® trade name into believing that the almonds were smoked in a smokehouse.  It is plausible that the Smokehouse® trade name would likely cause a reasonable consumer to believe that he or she was purchasing almonds with a smoke flavor.  Such a belief would be consistent with not only the Smokehouse® trade name but also the ingredients list on the back of the packaging, which includes "natural hickory smoke flavor."  (Id. at ¶ 25).  However, it is not plausible that the Smokehouse® trade name would likely cause a reasonable consumer to believe that he or she was purchasing almonds that were smoked in "a building where meat or fish is cured by means of dense smoke" or another structure used "for curing food by means of smoke."  See (id. at ¶ 35).

Because Plaintiffs have not plausibly alleged that a reasonable consumer would likely be deceived into believing that Blue Diamond's Smokehouse® almonds were smoked in a smokehouse, they have failed to state a claim under the MMPA.  Blue Diamond's motion will therefore be granted as to Count IV, and I need not address Blue Diamond's additional arguments regarding Plaintiffs' standing to seek injunctive relief and Plaintiffs' standing to bring claims on behalf of putative class members under other consumer-protection statutes.

Accordingly,

---

(S.D.N.Y. 2021) (denying motion to dismiss); Clark v. Blue Diamond Growers, No. 22-cv-1591, 2023 WL 4351464 (N.D. Ill. July 5, 2023) (same); Cummings v. Blue Diamond Growers, No. 1:22-cv-141-AW-HTC, 2023 WL 3487005 (N.D. Fla. May 15, 2023) (granting motion to dismiss).

**IT IS HEREBY ORDERED** that Defendant Blue Diamond Growers' motion to dismiss [36] is **GRANTED**.  The amended complaint of Plaintiffs Beth Peacock Muller, Thomas Fellin, and Michael Floyed [32] will be **DISMISSED**.

A separate Judgment in accordance with this Memorandum and Order will be entered on this same date.

RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE

Dated this 18th day of July 2023.